DAVID L. ANDERSON (CABN 149604)
United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

ASEEM PADUKONE (CABN 298812)
ANDREW SCOBLE (CABN 124940)
Assistant United States Attorneys

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6401
    FAX: (415) 436-7027
    Aseem.Padukone@usdoj.gov
    Andrew.Scoble@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 19-00280 RS (LB) |
| Plaintiff, | GOVERNMENT'S MEMORANDUM IN SUPPORT OF DETENTION |
| v. | |
| FERNANDO ROMERO BONILLA, | |
| Defendant. | |

GOVERNMENT'S DETENTION MEMORANDUM

Defendant Fernando Romero Bonilla, a/k/a "Black" ("Defendant"), is a full-fledged member of *La Mara Salvatrucha* (also known as MS-13), and in particular, the 20th Street clique. The 20th Street clique is responsible for several violent incidents in San Francisco, and Defendant himself has engaged violent acts. Notably, he is charged in this case with attacking a 15-year-old boy and his family in the Mission District of San Francisco with two co-defendants and other MS-13 associates. Sixteen other members of the 20th Street clique have been charged in this indictment. The charges include one count of racketeering conspiracy, seven counts of assault with a dangerous weapon in aid of racketeering, three counts of discharge of a firearm in furtherance of a violent crime, and three counts of attempted murder in aid of racketeering.

In March, the government filed a memorandum seeking the detention of all seventeen defendants. *See* Dkt. 43.[1] Sixteen of the seventeen defendants are in custody, while one defendant has been granted temporary release due to a health condition. Defendant initially waived findings on detention, but now seeks to reopen his detention hearing. The government opposes Defendant's request for release, and asks that the Court find that Defendant is a flight risk and a danger to the community, based on Defendant's gang membership, acts of violence, limited ties to the district, and a history of fleeing from law enforcement.

## BACKGROUND

### I. BACKGROUND ON MS-13 20TH STREET

*La Mara Salvatrucha*, also known as MS-13, is a Transnational Criminal Organization that was formed in Los Angeles, California, during the 1980s. MS-13 members principally are of El Salvadoran background, although many members have roots in other countries, such as Honduras and Guatemala. MS-13 has local gangs, or "cliques," located throughout the world. The racketeering enterprise targeted in this indictment is the 20th Street clique, a collection of MS-13 members in the Bay Area who have perpetrated a series of murders, attempted murders and violent assaults over the last several years, primarily in San Francisco. The defendants in this case are members of MS-13 20th Street.

---

[1] The Court certainly is welcome to review the omnibus detention memorandum filed in Dkt. 43. That filing, however, is 61 pages long and pertains to all 17 defendants. The memorandum seeks to ease the burden on the Court by synthesizing the earlier detention memorandum and highlighting other facts relevant to Defendant's bail hearing.

GOVERNMENT'S DETENTION MEMORANDUM

1

Previous federal and local investigations have revealed that MS-13 members sometimes travel to and from El Salvador, among other Central American countries; that MS-13 members in the United States communicate via cell phone with "big homies" in El Salvador; that MS-13 members use and carry firearms; and that members of MS-13 often traffic in controlled substances that originated outside the United States.  MS-13 constitutes an ongoing organization whose members function as a continuing unit for a common purpose of achieving the objectives of the enterprise, including enriching the members of MS-13 and preserving the power of the gang through fear, violence, and intimidation.  MS-13 has been named as the enterprise in various racketeering and racketeering-related cases throughout the United States, including previously in this district.

Members and associates of MS-13 violently clash with members of rival gangs over control of drug territory and extortion victims, as well as over gang pride.  Indeed, members of MS-13 are expected to attack, or aid in the attack, on members or suspected members of rival gangs if the opportunity arises.  In San Francisco, the principal rival to the 20th Street clique is the Norteños gang.  MS-13 members are also expected to retaliate against attacks by, or even mere insults from, rival gang members.  Failure to do so would be considered cowardice and would result in loss of standing within the gang or even punishment by the gang.  Conversely, greater respect is given to members who engage in more frequent and more audacious acts of violence against rivals (real or perceived), as well as to those who assist their fellow gang members in attacks.  Prospective members often must commit crimes with other gang members on behalf of the gang in order to prove their loyalty to the gang.

## II.     DEFENDANT'S GANG AFFILIATION, OFFENSE CONDUCT, AND INDICTMENT



**Fernando Romero Bonilla ("Black")**

Racketeering Conspiracy (Count One);
Assault with a Dangerous Weapon in Aid of Racketeering (Count Ten)

GOVERNMENT'S DETENTION MEMORANDUM

Defendant is a citizen of El Salvador who lacks legal status in the United States. He was ordered removed, *in abstenia*, by an immigration judge on May 30, 2018. He has been associated with the MS-13 20th Street clique since at least 2017. His tattoos, the contents of his phone, and several police contacts establish his membership in the gang.

A law enforcement photograph taken after Defendant's arrest shows Defendant with at least one gang tattoo on his chest and shoulder, in which an "M" and "13" are blended into a human skull.



Images extracted from Defendant's cell phone pursuant to a federal search warrant further establish his membership in MS-13. His phone contains images of him flashing "*La Garra*," a gang sign that signifies membership in MS-13, as well as other images demonstrating his MS-13 allegiance.




//
//
//

 

Defendant's communications on his phone further establish his relationship to other MS-13 gang members. Approximately fifteen of the contacts in his phone are known or suspected MS-13 gang members and associates. Among the text messages he sent to or received from his gang associates were images of the graffiti with which rival Norteños are suspected to have tagged his house, a picture of what appear to be real guns, and a picture of someone (possibly Defendant) holding a machete nearby what law enforcement believes to be Defendant's bed.

 



GOVERNMENT'S DETENTION MEMORANDUM

Defendant's gang engagement is not limited to his activity on his phone. Defendant appears in photographs with several of his co-defendants and other MS-13 associates, including in a photo posted by clique leader Elmer Rodriguez on his Instagram account on July 29, 2017 (second from the left):



Law enforcement has frequently encountered Defendant in MS-13 gang territory with other 20th Street clique members, including his co-defendants. Such contacts occurred on at least five occasions between July 2017 and February 2018. For example, on September 5, 2017, Defendant was arrested with his co-defendant, Kevin Reyes Melendez, following an assault and robbery of a 17-year-old victim. The suspects hit the victim with a broken mop handle and stole a phone and headphones. Witnesses identified Defendant as a perpetrator, but local authorities ultimately did not prosecute this case.

Defendant also was involved in an assault on January 24, 2019, this time perpetrated on a family in the Mission District that was out getting dinner. Defendant is charged for his role in this assault in Count 10 of the Superseding Indictment. According to the victim's mother, K.B., she was walking southbound on Valencia Street from 19th Street with three other people: J.H., her 15-year-old son, and her 12-year-old nephew. Two unknown males walked up to the group and asked her son, "What gang?" K.B. told the men that her son did not belong to a gang and that they were getting dinner as a family. The men then told J.H. and her son that they did not belong in the area. The victims observed that one

of the men had a black gun in his waistband and most of the others possessed knives. J.H. threw his jacket at the assailants, but the assailants grabbed K.B.'s son and J.H. and attacked them. K.B. tried to intervene in the attack to protect her son, but was thrown to the ground by one of the attackers. The 15-year-old boy reported that he heard the attackers say, "MS-13" during the assault, and one of the victims reported that an attacker had tried to stab them.

Defendant participated in the attack on this family, along with his co-defendants Evert Galdamez Cisneros and Kevin Guatemala Zepeda. Defendant appears to possess a knife during the attack. Security camera footage from a nearby bar captured part of the assault, and clearly depicts Defendant throwing and landing multiple punches on the 15-year-old minor victim. *See* Exhibit 1 (also Dkt. 43, Ex. 3). An image from this footage, with Defendant's face clearly identifiable, is depicted below.

Defendant's deep involvement in the MS-13 clique is apparent from other incidents as well. On May 16, 2019, Defendant was shot during a gang-related confrontation at Dolores Park, which MS-13 claims as its territory. Police believe that a rival gang was responsible for the shooting. Defendant denied knowing who shot him, but recorded jail calls indicate that 20th Street clique members and co-defendants who were out of custody communicated with in-custody gang members to report the gang's investigation of what had happened, who was responsible, and what action, if any, the gang should take.

GOVERNMENT'S DETENTION MEMORANDUM

On February 18, 2020, a federal grand jury returned a fourteen-count Superseding Indictment charging seventeen defendants with crimes related to their involvement in a racketeering enterprise. Defendant was charged in two counts: Racketeering Conspiracy (Count 1) and Assault with a Dangerous Weapon in Aid of Racketeering (Count 10). Count 10 stems from the January 24, 2019 assault on the family on 19th Street and Valencia. Defendant made his initial appearance on March 13, 2020, and was arraigned on March 16, 2020. The Court remanded Defendant to custody after Defendant waived a detention hearing and formal findings. Defendant now moves for his release from custody, and the government opposes because Defendant remains a danger to the community and a flight risk.

## ARGUMENT

### I.   LEGAL STANDARD

The Bail Reform Act of 1984 permits pretrial detention of a defendant without bail where "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; it is not necessary to prove both. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f)(2)(B). A finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Motamedi*, 767 F.2d at 1406.

The Court must consider four factors in determining whether the pretrial detention standard is met: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986). "[T]he Bail Reform Act mandates an [1] individualized evaluation [2] guided by the factors articulated in § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Categorical grants

or denials of bail, not tethered to an individualized determination, are impermissible. *Id.* Consideration of factors outside the articulated factors set forth in Section 3142 is also disfavored. *Id.*

## II. DEFENDANT POSES A SIGNIFICANT RISK OF FLIGHT AND DANGER TO THE COMMUNITY

All of the factors articulated under U.S.C. § 3142(g) weigh in favor Defendant remaining detained since he poses both a significant risk of flight and a danger to the community.

### Nature and Circumstances of the Offense

Defendant is an active member of MS-13, and has been associated with the 20th Street clique at least since 2017. Law enforcement believes that his involvement with MS-13 predates his involvement with the 20th Street clique, and that he was a member of MS-13 while in El Salvador. Members of the 20th Street clique are believed to be involved in several murders or attempted murders, including three attempted murders alleged in the indictment. Defendant was involved in violent incidents as part of the gang, including the assault charged in Count 10 in which Defendant, his co-defendants, and other MS-13 associates assaulted a family that was out to dinner in the evening, including a 15-year-old boy and his mother. The victims reported seeing one suspect with a gun, and many of the other assailants with knives. In security camera footage, Defendant appears to be holding a shiny object in his hand when he strikes the victim, thus corroborating the victims' observations.

Defendant's unprovoked group attack on a juvenile and his family illustrates the danger that he poses to the community. Defendant is part of a violent gang that thrives on intimidation and engaging in acts of violence. If Defendant is willing to launch a brazen assault at a popular intersection against a 15-year-old grabbing dinner with his mother and 12-year-old nephew, then anybody is at-risk of being victimized by Defendant's violence.

### Weight of the Evidence

The strength of the evidence in this case also supports the need for Defendant to remain detained. Defendant's membership in the racketeering enterprise is supported by his documented police encounters, social media posts, his tattoo, and telephone recordings. Defendant's assault on the juvenile and his family also is captured on video. *See* Exhibit 1 (also Dkt. 43, Ex. 3). The strength of this

evidence reveals both that Defendant poses a significant danger to the community, and also that he has incentive to flee due to the likelihood of his conviction.

### History and Characteristics of the Defendant

Defendant's history and characteristics also demonstrate both that he poses a risk of flight and a danger to the community. Defendant's track record establishes that he poses a significant risk of flight if he is released. Defendant lacks legal status and has strong ties to his home country, El Salvador. Defendant was ordered removed *in absentia* by an Immigration Judge on May 30, 2018. After being apprehended by Border Patrol in September 2016, Defendant violated the terms of his $12,000 bond in May 2018 by failing to appear for his I-340 interview. Defendant again violated the terms of his bond on July 15, 2019 by failing to appear for another I-340 interview. Ultimately, immigration authorities arrested Defendant on September 19, 2019 after conducting surveillance outside of his last known address. After an immigration officer approached Defendant and identified himself, Defendant failed to comply with the officer's orders by fleeing on foot before he was finally apprehended. Defendant continued to resist as he was being escorted by the officer.

Defendant also resisted arrest in the above-captioned case. Defendant sought to hide from law enforcement as Homeland Security Investigations agents searched for him in his brother's residence. Agents finally found him hiding underneath a blanket, pretending to be asleep. Defendant was non-compliant during this entire encounter, as he repeatedly pulled on his restraints, forcefully hit his head on the patrol car door frame, and started kicking and bending forward in the patrol car. Defendant then lied by denying his involvement with MS-13, which is contradicted by the evidence described above.

Defendant's failures to appear or comply with orders did not begin when he arrived in the United States. In 2018, the Department of Homeland Security received an Interpol Red Notice for Defendant from El Salvador, meaning that he is a fugitive there. The Court therefore need not speculate about Defendant's ability to comply with conditions of release. He has repeatedly demonstrated an inability to do so, both here and in El Salvador.

Defendant's history and characteristics also show that he would pose a significant danger to the community. Defendant has been a part of a criminal street gang known for employing violence and intimidation tactics since at least 2017. In addition to the assault charged in this case, Defendant's arrest

with co-defendant Kevin Reyes Melendez for the September 2017 assault and robbery of a 17-year-old provides further evidence of the danger that Defendant poses.

Defendant's mere involvement in this violent gang poses a danger to the community, as demonstrated by the May 16, 2019 shooting at Dolores Park – a popular San Francisco landmark that attracts hundreds of civilians daily. Though Defendant was the one who got shot, the incident resulted from a gang-related confrontation that led other 20th Street clique members to discuss their investigation of the incident and the gang's response to the shooting on recorded jail calls. Therefore unlike the 15-year-old boy and his family, Defendant was not a random victim. His involvement in this confrontation endangered not just himself, but many others who frequented the park that day.

**Nature and Seriousness of Danger to any Person or the Community**

The nature and circumstances of the offense and history and characteristics of Defendant, discussed in detail above, underscore the seriousness of the Defendant's danger to the community. Defendant's release would bring about two types of danger. First, MS-13 is a gang known by law enforcement for its witness intimidation tactics, so Defendant's victims would also be more at risk upon Defendant's release. Though the government has done its best to protect the identities of the victims at this stage of the case, there is an inherent risk in releasing a defendant who belongs to a gang known to engage in witness intimidation.

Second, Defendant's release would put the greater community at risk due to his involvement in indiscriminate violence, as evidenced by footage of the assault on a 15-year-old boy and his family near a popular intersection. Releasing Defendant would subject other community members to random acts of violence such as the beating suffered by the 15-year-old victim and his family. The greater community is also put at risk when Defendant engages in any sort of gang activity, as demonstrated by the Dolores Park shooting. No conditions fashioned by the Court could minimize this danger posed by Defendant.

### III.   COVID-19 DOES NOT SHIFT THE § 3142(g) FACTORS IN DEFENDANT'S FAVOR

The COVID-19 pandemic should not impact the Court's analysis of Defendant's danger and risk of flight. To the extent Defendant argues that the COVID-19 pandemic minimizes the risk he poses, the COVID-19 pandemic does not meaningfully shift the balance of the Section 3142(g) factors in Defendant's favor. The community itself is more vulnerable to the danger posed by Defendant given the

...

pandemic. This is because first responders are focused on mitigating the effects of the COVID-19 outbreak, reducing the ability to prevent and respond to wrongdoing. Indeed, as a district court in Maryland observed, installation of location monitoring tools poses a risk to United States Pretrial Services officers "given the current recommendations regarding implementation of social distancing." *United States v. Martin*, 2020 WL 1274857, Case No. PWG-19-140-13 (D. Md. Mar. 17, 2020).

In the current climate, irresponsible social habits can also endanger the health of the community. Defendant has shown an unwillingness or inability to follow rules, and a disregard for the welfare of others. His failure to follow rules poses particular dangers to the community. Defendant poses a significant danger to the community and flight risk, and he cannot show that the risk of contracting COVID-19 (a risk that applies in the community as well) changes that.

**IV.   CONCLUSION**

Defendant is a member of a dangerous gang and committed a violent assault caught on video. Therefore there is clear and convincing evidence that Defendant poses a danger to the community and should not be released. Defendant's history of flight from law enforcement and inability to comply with bond terms also demonstrates, by a preponderance of the evidence, that he is a risk of flight. There are no conditions or combination of conditions that reasonably mitigate Defendant's risk of flight or dangerousness to the community and he should be detained pending trial. Accordingly, the Court should deny Defendant's motion for release.

DATED:  December 18, 2020                                    Respectfully submitted,

DAVID L. ANDERSON
United States Attorney

  /s/  *Aseem Padukone*
ASEEM PADUKONE
ANDREW SCOBLE
Assistant United States Attorneys

GOVERNMENT'S DETENTION MEMORANDUM
11